**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UFCW LOCAL 1776 AND PARTICIPATING EMPLOYERS HEALTH AND WELFARE FUND and PAINTERS DISTRICT COUNCIL No.30 HEALTH and WELFARE FUND, <br><br> on behalf of themselves and all others similarly situated, <br><br>      Plaintiffs, <br><br>    v. <br><br> MERCK & Co., Inc., <br><br>      Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> No. <br><br> ***JURY TRIAL DEMANDED*** |

## CLASS ACTION COMPLAINT

Plaintiffs, UFCW Local 1776 And Participating Employers Health And Welfare Fund ("UFCW Fund") and Painters District Council No.30 Health and Welfare Fund ("Painters Fund"), individually and on behalf of all others similarly situated, for their Complaint against Defendant, upon knowledge as to matters relating to itself and upon information and belief as to all other matters, allege as follows:

1. Plaintiffs, by their attorneys, on behalf of themselves and all other similarly situated third-party payors nationwide ("Third-Party Payors"), bring this action against Merck & Co., Inc. for claims relating to the manufacturing, marketing and sale of a drug (rofecoxib) used to treat arthritis and acute pain which was marketed in the United States as "VIOXX®."

## THE PARTIES

2.     The UFCW Fund is a citizen of the Commonwealth of Pennsylvania, maintaining its principal place of business at 3031B Walton Road, Plymouth Meeting, Montgomery County, Pennsylvania. The UFCW Fund has paid for purchases of Vioxx® totaling more than Nine Hundred Thousand Dollars ($900,000.00). The Painters Fund is a citizen of the State of Illinois, maintaining its principal place of business at 3813 Illinois Avenue, St. Charles, Kane County, Illinois. The Painters Fund has paid for and/or reimbursed for purchases of Vioxx® totaling more than One Hundred Thousand Dollars ($100,000.00). Each of the UFCW Fund and The Painters Fund is an "employee welfare benefit plan" and an "employee benefit plan" as defined in Employee Retirement Income Security Act (ERISA), 29 USC §§ 1002(1), 1002(3), 1003(a). As such, Plaintiffs are legal entities entitled to bring suit in their own names pursuant to 29 USC§ 1132(d). Plaintiffs are not-for-profit trusts, each sponsored by and administered by a Board of Trustees, established and maintained to provide comprehensive health care benefits to participant-workers, who are employed under various collective bargaining agreements, and to their dependents.

3.     Plaintiffs have paid all or part of the cost of its participants' purchases of Vioxx® during the Class Period, beginning in 1999 and continuing through September of 2004.   Pursuant to their plans, the Plaintiffs, through pharmacy benefit managers and managed care administrators, purchase prescription drugs for their participants and provide coverage for medical testing and visits to physicians.  During the relevant time period, the Plaintiffs reimbursed participants for their purchases of Vioxx®, and have paid for or will be required to pay coverage for any necessary visits to physicians and related testing in connection with switching from Vioxx® to alternative therapies.

The Plaintiffs have been injured and will continue to be injured as a result of the unlawful conduct alleged herein.

4.      Merck & Co., Inc. ("Merck") is a pharmaceutical manufacturing and sales company with headquarters at 1 Merck Drive, Whitehouse Station, New Jersey. At all times relevant, Merck was and continues to be engaged in the business of testing, manufacturing, labeling, licensing, marketing, distributing, promoting and/or selling, either directly or indirectly through third parties or related entities, the pharmaceutical, Vioxx®. Merck does business throughout the United States, including throughout the Commonwealth of Pennsylvania and the State of Illinois.

## JURISDICTION AND VENUE

5.      This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 as the UFCW Fund is a citizen of the Commonwealth of Pennsylvania, Painters Fund is a citizen of the State of Illinois and Merck is a citizen of the State of New Jersey. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interests and costs.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendant transacts business, is found, and/or has agents in this district, and because a substantial portion of the part or all of the alleged improper conduct took place in this district. Merck, through its marketing and sales of Vioxx® has transacted substantial business in this District.

## INTRODUCTION

7.      Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3). Plaintiffs seek to represent all other Third-Party Payors, throughout the United States (excluding all governmental entities, Defendant and Defendant's subsidiaries and affiliates) who, beginning in 1999, and continuing through to the present, have purchased, or reimbursed their beneficiaries/insureds for their purchases of Vioxx,® and, as a result, have overpaid for a product

that was marketed as more safe and effective than much lower-cost alternatives when, in reality, it was not. The Plaintiffs and other Third-Party Payors also have paid for product that is unusable and have incurred additional expenses associated with Vioxx®'s withdrawal from the market as well as the treatment necessary to deal with conditions caused and/or aggravated by undisclosed side effects of the drug. (the "Class").

8.      According to media reports, Vioxx® generated sales revenue of approximately $2.5 billion in 2003. Immediately before its withdrawal from the market, Vioxx® accounted for a substantial portion of all arthritis treatment prescriptions.   Consequently, a large number of insurance carriers that provide health insurance for the patient population, as well as other Third-Party Payors, which together exceed a thousand entities, covered the purchases of the medication by the insureds. This action is brought as a class action because joinder of the members of the Class, which are geographically dispersed throughout the United States, is impracticable.   Plaintiffs therefore bring this action on their own behalf and as representatives of the Class.

## CLASS ALLEGATIONS

9.      Plaintiffs believe that there are more than one thousand  members of the Class who are geographically dispersed across the country.   The identities of all Class members are not presently known to Plaintiffs but can be readily obtained.

10.     All members of the Class were and are similarly affected by having purchased and/or reimbursed for purchases of Vioxx.® Common questions of law or fact predominate over any questions that may affect only individual members.  Questions of law or fact common to the Class include, but are not limited to:

(a)     whether the sale of Vioxx® violated the Pennsylvania, Illinois and other states' similar Unfair Trade Practices and Consumer Protection Laws;

-4-

(b)     whether Merck's misrepresentations regarding Vioxx® allowed Merck to market and sell its product in place of safer and lower-cost treatment alternatives and/or to charge more for Vioxx® than it would have been able to if the truth were known;

(c)     whether Defendant was unjustly enriched as a consequence of its unfair and unjust acts;

(d)     whether Defendant breached implied warranties in connection with the sale of Vioxx®;

(e)     whether Plaintiffs and the Class are entitled to restitution and/or rescission for the costs and expenses in connection with any purchases, reimbursements or other costs related to their purchases and reimbursements of Vioxx® in light of the withdrawal of Vioxx®, including costs of switching from Vioxx® to alternative therapies and costs related to treatment for conditions caused or aggravated by undisclosed side effects; and

(f)     whether Plaintiffs and the Class are entitled to actual and compensatory damages related to their purchases and reimbursements for purchases of Vioxx®.

11.     Plaintiffs' claims are typical of, and co-extensive with, the claims of the Class. Plaintiffs and the Class sustained damages in the same manner as a result of Defendant's wrongful conduct.

12.     Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs seek no relief antagonistic to the interests of the Class. In addition, Plaintiffs are represented by counsel who are competent and experienced in the prosecution of class actions.

13.     A class action is a superior method for the adjudication of the controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that such individual actions would engender.  The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practicable to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

14.     Plaintiffs believe that this action will further the policies underlying the laws of the Commonwealth of Pennsylvania and those of other states, including encouraging full disclosure of known information regarding the safety of pharmaceutical products.

## FACTUAL ALLEGATIONS

15.     Vioxx® is the brand name for rofecoxib, a drug in the NSAID (non-steroidal anti-inflammatory drug) class used to treat osteoarthritis and acute pain.  Merck began to market Vioxx® in 1999, and since 2003, worldwide sales of Vioxx have been $2.5 billion annually.

16.     In 1999, the year that Vioxx® was approved by the Food and  Drug Administration ("FDA"), Merck knew that Vioxx posed an increased risk of serious cardiovascular threat, including heart attacks and strokes.  In a clinical study by Merck in 2000, that knowledge was confirmed, but Merck waited until 2002 to implement a mild caution to the labeling associated with Vioxx® which reflected the increased cardiovascular risks.

17.     Despite its knowledge of the serious cardiovascular and stroke threat posed by Vioxx®, Merck continued to insist that the risks were small and inconclusive and continued to market the drug aggressively to consumers through heavy television and magazine advertising.

18.   Other studies recently suggest an increased risk of cardiovascular risk in patients who take Vioxx®.

19.   In August 2004, an FDA researcher and other scientists working on research sponsored by Kaiser Permanente, a large health insurance company, reported that Vioxx® could be responsible for as many as 27,000 heart attacks and the Times of London reported that Vioxx® could have been responsible for 7,000 deaths.

20.   A drug to relieve arthritis pain, such as Vioxx®, only has value if it is safe. Vioxx® was not safe, and it therefore lacked value.

21.   Indeed, Vioxx® causes latent damage which requires monitoring for potential future complications. As a result, the true economic cost of Vioxx® is not only the inflated amount Merck charged for it, but also the cost of future medical monitoring and treatment.

22.   Vioxx® competed with several other therapies, including both prescription and over-the- counter NSAID medications. Most of these competing therapies were sold for a fraction of the cost of Vioxx® to the Class. These other therapies include ibuprofen, acetaminophen, and aspirin.

23.   Merck told healthcare providers that Vioxx® was a superior therapy despite the knowledge that Vioxx® caused serious and dangerous complications.

24.   Merck suppressed the knowledge that Vioxx® caused serious complications because Merck desired the large profits provided by Vioxx® sales.

25.   In short, Merck sacrificed the safety of patients by selling them an inferior product which had the potential to kill them at an extremely inflated price in order to earn large profits.

26.   Because Vioxx® caused life-threatening complications, it was not worth anything, much less what Merck charged for it. Had Merck disclosed the very serious complications caused by its drug, the Plaintiffs would not have purchased and/or reimbursed for purchases of Vioxx.®

27.     Thus, Plaintiffs and the Class members who purchased Vioxx® or reimbursed their participants for purchases of Vioxx® were overcharged by Merck because of Merck's omissions regarding material information concerning Vioxx®'s safety, value, and fair cost.

28.     In addition, Plaintiffs and the Class members who purchased Vioxx® or reimbursed their participants for purchases of Vioxx® have and will be required to pay for the costs of patients' visits to physicians in connection with switching from Vioxx® to alternative therapies.  A change of this kind often requires continuous medical monitoring because Vioxx® can cause major organ damage, which is often latent, asymptomatic and/or undiscovered.  Monitoring may involve various tests, particularly electrocardiograms, diagnostic imaging, and echocardiograms.  A comprehensive monitoring program also includes:  patient notification; further studies of Vioxx®'s long-term effects; assistance in the early diagnosis and treatment of resulting injuries; medical examinations; compilation and analysis of relevant information from patients; creation, maintenance, and operation of a registry to collect this information; conduct of medical research concerning Vioxx®-induced diseases; and dissemination of all such information to patients and their physicians.

29.     As a result of the Defendant's unlawful activity, Plaintiffs and the Class have sustained losses and damages, including, *inter alia*, paying for a product that was and is unmerchantable  and worthless, and that has exposed persons whose purchases Plaintiff and the Class paid for or reimbursed to unnecessary health risks, including the risk of physical injury and death.  Plaintiff and the Class also have had to pay and/or reimburse for purchases of substitute anti-pain and arthritis drugs and for additional medical examinations, treatment and monitoring.  Additionally, Plaintiffs and the Class have  incurred and/or will incur expenses caused by the need to liquidate their supplies of Vioxx® purchased from Merck  through September 27, 2004.  As a result of the recall by Merck, any remaining Vioxx® could not be used.  Accordingly, Plaintiffs and

the Class had to pay or be reimbursed for purchases for the supply of an alternate therapy even though Plaintiffs and the Class had already paid for the costs of therapy for that same time period.

## COUNT I

### VIOLATION OF CONSUMER AND
### DECEPTIVE TRADE PRACTICES UNDER STATE LAW

30.     Plaintiffs incorporates by reference the preceding allegations.

31.     Merck engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes when it engaged in a course of conduct designed to induce the Class to purchase and/or pay for or reimburse for the purchase of Vioxx®. Merck misrepresented the alleged benefits of Vioxx®; failed to disclose material information concerning known side effects of the drug; misrepresented the quality of the drug as compared to much lower-cost alternatives; and otherwise engaged in fraudulent and deceptive conduct creating the likelihood of confusion and misunderstanding.

32.     As a direct  result of Merck's, deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiffs and the Class were and continue to be damaged.

33.     The UFCW Fund and the Painters Fund purchased and/or reimbursed their participants for purchases of Vioxx® that were made primarily for personal, family or household purposes. Through its actions and omissions, Merck has  has engaged in unfair competition or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1 et seq.  In addition, Merck also has violated similar consumer protection statutes enacted throughout the United States as listed below.

34.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Alaska Stat. § 45.50.471 et seq.

-9-

35.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522 et seq.

36.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Ark. Code § 4-88-101 et seq.

37.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Cal. Bus. & Prof. Code § 17200 et seq.

38.     Defendant has engaged in unfair competition or deceptive acts or practices or has made false representations in violation of Colo. Rev. Stat. § 6-1-105 et seq.

39.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b et seq.

40.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of 6 Del. Code § 2511 et seq.

41.     Defendant has engaged in unfair competition or deceptive acts or practices or made false representations in violation of D.C. Code Ann. § 28-3901 et seq.

42.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Fla. Stat. § 501.201 et seq.

43.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Ga. Stat. § 10-1-392 et seq.

44.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Haw. Rev. Stat. § 480 et seq.

45.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Idaho Code § 48-601 et seq.

46.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of 815 Ill. Comp. Stat. § 505.1 et seq.

47.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Kan. Stat. Ann. § 50-623 et seq.

48.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110 et seq.

49.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401 et seq.

50.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of 5 Me. Rev. Stat. Ann. § 207 et seq.

51.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Massachusetts General Laws Ch. 93A.

52.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Md. Com. Law Code § 13-101 et seq.

53.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Mich. Stat. § 445.901 et seq.

54.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Minn. Stat. § 8.31 et seq.

55.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Mo. Ann. Stat. § 407.010 et seq.

56.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Mont. Code § 30-14-101 et seq.

57.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601 et seq.

58.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903 et seq.

59.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1 et seq.

60.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of violation of N.J. Rev. Stat. § 56:8-1 et seq.

61.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of N.M. Stat. § 57-12-l et seq.

62.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349 et seq.

63.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of N.C. Gen. Stat. §§ 75-1.1 et seq.

64.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01 et seq.

65.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01 et seq.

66.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Okla. Stat. 15 § 751 et seq.

67.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605 et seq.

68.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of R.I. Gen. Laws § 6-13.l-1 et seq.

69.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10 et seq.

70.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of S.D. Code Laws § 37-241 et seq.

71.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Tenn. Code Ann. § 47-18-101 et seq.

72.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41 et seq.

73.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Utah Code § 13-11-1 et seq.

74.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Vt. Stat. § 2451 et seq.

75.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Va. Code § 59.1-196 et seq.

76.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010 et seq.

77.     Defendant has engaged in unfair competition or deceptive acts or practices in violation of W. Va. Code § 46A-6-101 et seq.

78.     Plaintiffs and the Class have been injured in their business and property by reason of Defendants' unfair and deceptive acts alleged in this Count. Their injury consists of, among other things as described above, paying higher prices for Vioxx® than they would have paid for safe and

-13-

effective treatment alternatives in the absence of these violations. This injury is of the type the state consumer protection and deceptive practices statutes were designed to prevent and directly results from Defendant's unlawful conduct.

## COUNT II

## UNJUST ENRICHMENT UNDER STATE LAW

79.     Plaintiffs incorporate by reference the preceding allegations.

80.     Defendant misrepresented, concealed and/or omitted to inform Plaintiffs and the Class and the physicians who prescribed Vioxx® of the adverse health effects which may result from taking its product. The material information Defendant concealed from government agencies, physicians, Plaintiffs, and the Class include: (a) that Defendant' internal data and analyses reflected the unreasonably dangerous nature of Vioxx® and the material negative side effects of the drug: (b) that Defendant' internal data and analyses reflected that Vioxx® posed a substantially greater risk of side effects; and (c) that given the true safety profile of Vioxx®, the drug was not merchantable.

81.     Said misrepresentations, concealment and/or omissions were likely to deceive and/or in fact caused Plaintiffs and the Class to purchase or reimburse for purchases of Vioxx®.

82.     Defendant intended that Plaintiffs and the Class and physicians who prescribed Vioxx® rely on their misrepresentations, concealment and/or omissions as to the description, quality and characteristics of Vioxx® and on a belief that Vioxx® was safe and effective.

83.     Defendant's actions were willful, wanton and reckless.

84.     Plaintiffs and the Class have been damaged as a proximate result of Defendant's unlawful actions and have suffered actual, ascertainable losses, in that they paid for or reimbursed for purchases of, and then, as a result of the recall of Vioxx® were required to pay or reimburse for

purchases of an alternate therapy for the same time period. Indeed, Vioxx® has never been suitable for sale, and absent Defendant' violations of the statutory and common law, Plaintiff and the Class would not have paid for or reimbursed for purchases of Vioxx®. Moreover, Plaintiff and the Class were and will be required to pay for coverage for any necessary tests, visits to physicians, and other costs in connection with switching from Vioxx to an alternative therapy, as well as treatment for and/or monitoring for conditions caused or aggravated by the undisclosed side effects of the drug.

85.     As a direct and proximate result of Defendant's unlawful conduct as described above, Plaintiffs and the Class have suffered an ascertainable loss of money and are therefore entitled to relief, including damages.

86.     Defendant has improperly benefitted from its unlawful acts through the overpayments for Vioxx® by Plaintiff and the Class and the profits resulting from such overpayments. It would be inequitable for Defendant to be permitted to retain the benefit resulting from these overpayments, which were conferred by Plaintiffs and the Class and retained by Defendant.

87.     Plaintiffs and the Class are entitled to the establishment of a constructive trust consisting of the benefit to Defendant of such overpayments, from which Plaintiffs and the other Class members may make claims for restitution.

## COUNT III

### BREACH OF IMPLIED WARRANTY

88.     Plaintiffs incorporate by reference the preceding allegations.

89.     Defendants, in the manufacture, marketing and sale of Vioxx® impliedly warranted to Plaintiffs and the Class that said drug was fit for its particular ordinary purpose, that being to provide safe and effective treatment for pain.

90.     Defendants, their agents and their employees knew or should have known that Vioxx® causes negative health effects and/or places persons at risk for negative health effects to such an extent that the drug was worthless and unusable.

91.     Plaintiffs and members of the Class reasonably relied upon the skill and judgment of Defendants as to whether Vioxx® was of merchantable quality and safe and fit for its intended use.

92.     Under the Uniform Commercial Code in Pennsylvania, and in other states in which Defendants market and sell their products, there exists an implied warranty of merchantability.  *See* 13 Pa. C.S.A. §§ 2314, 2315.

93.     Defendants breached this warranty of merchantability by selling Vioxx® as being fit for its ordinary purpose when, in fact, it was not.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Honorable Court declare, adjudge and decree the following:

A.     That this action may be maintained as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure with respect to Plaintiffs' claims for declaratory, equitable and injunctive relief, and Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages and other monetary relief, and declaring Plaintiffs as representatives of the Class and its counsel as counsel for the Class;

B.     That the conduct alleged herein constitutes violations of the Consumer and Deceptive Practices Statutes set forth above, the law of unjust enrichment, and a breach of implied warranties;

C.    That Plaintiffs and the Class are entitled to damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.  That Plaintiffs and the Class also are entitled to penalties and other monetary relief provided by applicable law, including treble damages;

D.    That Plaintiffs and each member of the Class are entitled to the amounts by which the Defendant has been unjustly enriched;

E.    That Plaintiffs and the Class recover their costs of suit, including reasonable attorneys' fees and expenses as provided by law; and

F.    That Plaintiffs and the Class are granted such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

## JURY TRIAL DEMAND

Plaintiffs demands a trial by jury of all issues so triable in this case.


Dated: January 4, 2004

By: _____
William R. Kane
Ellen Meriwether
**MILLER FAUCHER and CAFFERTY LLP**
One Logan Square, Suite 1700
18th and Cherry Streets
Philadelphia, PA 19103
(215) 864-2800


Marvin A. Miller
Patrick E. Cafferty
Jennifer W. Sprengel
**MILLER FAUCHER and CAFFERTY LLP**

-17-

30 North La Salle Street
Suite 3200
Chicago, Illinois  60602
(312) 782-4880

Gerard P. Egan
Brian P. Kenney
Eric L. Young
**KENNEY LENNON & EGAN**
3031C Walton Road, Suite 202
Plymouth Meeting, PA 19462
(610) 940-9099

Joseph M. Burns
**JACOBS, BURNS, ORLOVE,
STANTON &  HERNANDEZ**
122 South Michigan Avenue
Suite 1720
Chicago, Illinois  60603
(312) 372-1646

*Attorneys for Plaintiffs*